Donald CZAJKOWSKI, Individually and as representative of a Class of Persons similarly situated, Plaintiff,

v.

STATE OF ILLINOIS, Daniel Walker, Governor of the State of Illinois, Robert Allphin, Individually, as Director of the Illinois Department of Revenue and as Agent of the Illinois Retail Candy and Tobacco Distributors Association, Richard Dunn, Thomas Howard, George Rummell, Donald Yearly, Philip Mitchell, Michael Berry, Robert Motta, Jane Conray, Reg Anstrom, Illinois Association of Tobacco & Candy Distributors, and Unknown Defendants, Defendants.

No. 76 C 4729.

United States District Court,
N. D. Illinois, E. D.

Dec. 15, 1977.

Ditkowsky & Contorer, Chicago, Ill., for plaintiff.

William L. Perlman, Asst. Atty. Gen., State of Illinois, Chicago, Ill., for defendant State of Illinois.

Anton R. Valukas, Terry Rose Saunders, Jenner & Block, Chicago, Ill., for defendant Daniel Walker.

Robert A. Sternberg, Cohon, Raizes & Regal, Chicago, Ill., for defendant Illinois Association of Tobacco & Candy Distributors.

Paul J. Petit, Samuel J. Betar, Schippers, Betar, Lamendella & O'Brien, Chicago, Ill., for all other defendants.

## MEMORANDUM OPINION

MARSHALL, District Judge.

Plaintiff, Donald Czajkowski, a retailer of cigarettes in Hammond, Indiana, has brought this action against the State of

Illinois, former Governor Walker, the Director of the Illinois Department of Revenue, several employees of that department, and the Illinois Association of Tobacco and Candy Distributors, alleging violations of various federal constitutional and statutory provisions. Plaintiff claims that two sections of the Illinois Cigarette Tax Act, Ill. Rev.Stat. ch. 120, §§ 453.9c and 453.18, are unconstitutional and that defendants' enforcement of those sections violates plaintiff's civil rights, the United States Constitution, and Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. Plaintiff sues both individually and as representative of a class of Indiana businessmen who retail cigarettes in their stores along the northeastern border of Illinois and Indiana. Czajkowski has also joined Thomas O'Leary as a plaintiff representing a class of persons who purchase cigarettes from these retailers and who are threatened with enforcement of the Illinois statutes.[1]

The challenged statutory provisions are part of a comprehensive State regulatory scheme taxing the distribution, sale and use of cigarettes in Illinois. Ill.Rev.Stat., ch. 120, §§ 453.1–453.67. This statutory scheme is divided into two interrelated parts, with one part imposing a tax on persons engaged in the business of selling cigarettes at retail (§§ 453.1–453.30), and the other imposing a tax on the privilege of using cigarettes in Illinois (§§ 453.31–453.-67). See O'Leary v. Allphin, 65 Ill.2d 268, 2 Ill.Dec. 324, 328, 357 N.E.2d 491, 495 (1976). Each part contains enforcement provisions which are intended to insure that the taxes are properly collected and remitted to the State, and each part also authorizes civil and criminal penalties against persons who violate the statutes. Both of the sections challenged here fall under the first part of the statutory scheme. Section 453.9c, the "transporter" provision, prohibits any person from transporting more than 2,000 untaxed cigarettes (10 cartons) into Illinois

without a permit issued by the Illinois Department of Revenue. Violators of this section are subject to criminal prosecution and the offending goods may be confiscated and forfeited to the State. Section 453.18 complements the function of § 453.9c by providing that authorized employees of the Department of Revenue may arrest without a warrant any person who violates the Act "in [their] presence," and may seize any offending packages possessed by that person without a warrant.

Plaintiffs' complaint is based on a single alleged factual pattern arising out of the enforcement of the cigarette taxing statutes. Armed employees of the Illinois Department of Revenue drive unmarked official cars to the vicinity of plaintiffs' Indiana businesses, where they observe plaintiffs' customers purchasing large quantities of cigarettes. Because Indiana has a lower cigarette tax than that imposed by Illinois, Indiana retailers can sell their cigarettes for less and can draw substantial numbers of Illinois bargain-hunters to their stores. After making their bulk purchases, the buyers attempt to transport their bounty across the Illinois state line by automobile. However, Illinois Revenue agents follow some purchasers from the stores to the border. As soon as the border is penetrated, the agents stop the purchaser's automobile, carry out a warrantless search of their person and possessions for the offending articles, perform a warrantless arrest of the violators, confiscate the unlawful cigarettes as well as the purchaser's automobile, and bring a criminal complaint and/or a civil action against the violator. Apparently, although some of the buyers have attempted to procure a permit from the Department to buy large quantities of cigarettes, they have generally been unsuccessful in securing this potential defense to their prosecution.

---

1. Although O'Leary and his class do not appear as plaintiffs in the caption of the complaint, this omission is only a formal irregularity. See Fed.R.Civ.P. 10(a). In the absence of a showing of prejudice to defendants, the caption does not limit plaintiff's claim. The nature of plaintiff's cause of action is determined by the allegations of the complaint, not the caption. *Blanchard v. Terry & Wright, Inc.*, 331 F.2d 467 (6th Cir. 1964).

Plaintiffs' complaint attempts to transform this alleged misconduct into a number of federal constitutional and statutory violations. Jurisdiction is invoked under 28 U.S.C. §§ 1331, 1343,[2] 2281,[3] 2201 and 2202.[4] Although the complaint is inartfully and confusingly drawn, we liberally interpret it to present the following theories of recovery.

First, Sections 453.9c and 453.18 of the Act are unconstitutional both on their face and as applied, in that they violate the Commerce Clause and the Fourth, Fifth and Fourteenth Amendments to the Constitution. The statutes violate the Commerce Clause by stopping interstate commerce in Indiana-taxed cigarettes at the Illinois state line, and by interfering with the Indiana retailers' right to sell to all persons in the two-state market area, whether they are travelling interstate or intrastate. The statutes violate the Fourth Amendment by authorizing the warrantless search and seizure of the cigarettes, automobiles and other personal property of the buyers. Furthermore, state revenue agents in practice have breached the command of this amendment by searching the premises of the retailers' businesses through binoculars and physical trespass, without first procuring a warrant. The Fourth Amendment theory also encompasses the intimidation and warrantless arrest of suspected violators of the statutes. The due process clauses of the Fifth and Fourteenth Amendments are transgressed by the summary confiscation of the customer's property, and by the related but more indirect confiscation of the retailer's economic expectations by the defendants' unwarranted attack on their customers. It is also a violation of due process for Illinois to apply its taxing statutes ex-

tra-territorially to destroy Indiana businesses, by stationing armed revenue agents at surveillance points outside those businesses to apprehend suspected violators. Finally, plaintiffs' equal protection theory is that the statutes and enforcement procedures discriminate against interstate as opposed to intrastate travelers, and also discriminate against customers and retailers on the Indiana side of the border since the statute is not similarly enforced against similar persons on the Illinois-Kentucky border or in the middle of Indiana.

Second, the complaint alleges that defendants' enforcement of the Illinois Cigarette Tax Act has violated plaintiffs' civil rights under 42 U.S.C. § 1983 by depriving them of rights under the First Amendment, the Commerce Clause, and the due process and equal protection clauses of the Fourteenth Amendment (Complaint, ¶ I(a) and p. 14). The due process and equal protection theories are the same as those described above. Plaintiffs claim that the First Amendment guarantee of free association creates a right to attract and sell to Illinois residents in their effective market area, which includes parts of both Indiana and Illinois. The enforcement of the Act interferes with this right by limiting access by Illinois residents to their businesses. Under the Commerce Clause, plaintiff-retailers claim that their constitutional right to trade freely in interstate commerce and their customer's right to purchase freely in interstate commerce have been infringed.

Third and finally, plaintiffs assert that defendants have enforced the challenged statutory provisions as part of a conspiracy to force them out of business in violation of Sections 1 and 2 of the Sherman Act. According to this theory, former Governor

---

**2.** Plaintiffs actually cite § 1342, but since this section is totally inapplicable to this action and since § 1343 is the usual jurisdictional counterpart in § 1983 actions, we deem this to be a typographical or inadvertent error.

**3.** This section, requiring the convening of a three-judge court, was repealed by Congress on August 12, 1976, some 4 months before this suit was instituted. Pub.L. 94–381, 90 Stat. 1119, 94th Cong., 2d Sess. (1976). Three-judge

courts need no longer be convened in cases such as this one.

**4.** These sections of the Declaratory Judgment Act do not confer any independent or additional subject matter jurisdiction on the federal courts. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *McGrath v. Weinberger*, 541 F.2d 249 (10th Cir. 1976).

Walker, the Illinois Department of Revenue, and the Illinois Association of Tobacco and Candy Distributors (the Association) conspired to create a monopoly for Illinois merchants who compete with Indiana sellers in the market for retail cigarettes bought by interstate travelers. Thus the Department supposedly instituted its statutory enforcement procedures "at the urging" of the Association, which had made monetary contributions to Walker's political campaign. Employees of the department then misused their official positions by harassing and intimidating westbound customers through arrests and confiscations of property. The Department also issued press releases which threatened bulk purchasers with arrest and confiscation. This action was calculated to frighten customers and to induce them not to patronize the Indiana retailers. Furthermore, the Department imposed an arduous and inaccessible procedure for acquiring permits to lawfully transport large numbers of cigarettes. Since the Department required applications for permits to be submitted two weeks in advance of the date of transporting the cigarettes, these delays have quashed impulse buying by casual purchasers. Therefore, in promulgating these enforcement procedures, defendants have attempted to lessen or eliminate competition between Indiana and Illinois cigarette retailers and have created a restraint of trade which substantially interferes with interstate commerce, in violation of Sections 1 and 2 of the Sherman Act. As a result, plaintiffs claim that their businesses stand to lose annual sales of 40 million cartons of cigarettes, or roughly 12 million dollars per year.

In his prayer for relief, plaintiffs seek a declaratory judgment that Sections 453.9c and 453.18 are unconstitutional, and a preliminary and permanent injunction against defendants' enforcement of these statutes and against defendants' infringement of their constitutional rights. They also seek injunctive relief to compel defendants to cease interference with their businesses, to provide readily accessible permits to prospective customers, and to stop trespassing on plaintiffs' property. For past constitutional and statutory violations, plaintiffs demand 12 million dollars in compensatory and punitive damages from each defendant, as well as treble damages for unfair competition from the Director of the Illinois Department of Revenue, the Department itself, and the Illinois Association of Candy and Tobacco Distributors.

In response to the complaint, all the defendants have filed motions to dismiss for failure to state a claim and for lack of subject matter jurisdiction. The motions advance numerous arguments for dismissal, some of which are adopted by or apply to all the defendants, and others which are particular to one or more defendants. Briefly stated, defendants argue that the action is barred by 28 U.S.C. § 1341 since it seeks to enjoin the assessment or collection of state taxes, that plaintiffs lack standing to challenge the constitutionality of the statutes, that these constitutional claims do not present a sufficiently substantial federal question to confer jurisdiction under 28 U.S.C. § 1331, that jurisdiction over the State of Illinois as a party defendant is barred by the Eleventh Amendment, that the action is barred by principles of res judicata and collateral estoppel, and that the complaint fails to state a claim for relief under § 1983 or the Sherman Act. We shall consider the objections in this order.

## I. Jurisdictional Challenges

### A. Section 1341

The threshold question is the existence of subject matter jurisdiction over plaintiffs' complaint. The complaint requests a declaration that two sections of a state tax statute are unconstitutional and an injunction against enforcement of these tax laws against certain persons. Consequently, it is subject to a jurisdictional attack under 28 U.S.C. § 1341, which provides that:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law

where a plain, speedy and efficient remedy may be had in the courts of such State.

It is arguable that plaintiffs are only seeking to enjoin the state from using unconstitutional methods and procedures to collect the taxes, rather than the collection of taxes itself, so that § 1341 would be inapplicable. However, in order to grant plaintiffs the relief they request, we would in effect be enjoining the collection of cigarette taxes. For example, plaintiffs demand an injunction preventing the state from expending any funds to enforce the Act against them. The state obviously cannot collect a tax when it has no funds for enforcement. Section 1341 cannot be avoided by attacks on the administration and implementation of the taxing scheme rather than on the validity of the tax itself. *See Kimmey v. H. A. Berkheimer, Inc.*, 376 F.Supp. 49, 54–55 (E.D.Pa.1974), *aff'd*, 511 F.2d 1394 (3d Cir. 1975); *Green v. Klinkofe*, 422 F.Supp. 1021, 1025 (N.D.Ind.1976).

■ Section 1341 embodies a well-settled federal policy against interference with a state's administration of its own fiscal operations. *Tully v. Griffin, Inc.*, 429 U.S. 68, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976). When applicable, it effectively ousts the federal court of all jurisdiction. Its prohibitions cannot be evaded by framing the complaint as one for declaratory rather than injunctive relief. *See Gray v. Morgan*, 371 F.2d 172, 174 (7th Cir. 1966); *Green, supra* at 1024. Nor is it affected by the fact that the suit contains claims of constitutional deprivations under § 1983 of the Civil Rights Act. *Miller v. Bauer*, 517 F.2d 27, 29 n. 1 (7th Cir. 1975); *Bland v. McHann*, 463 F.2d 21 (5th Cir. 1972). The section commands that a party must travel first to state court to challenge matters of state taxation, even if federal statutory or constitutional rights are asserted. *Zenith Dredge Co. v. Corning*, 231 F.Supp. 584, 587 (W.D. Wis.1964). The states bear responsibility with federal courts to guard federal rights. Absent some claim that state procedures are inadequate to safeguard those federal rights, the federal courts are under an equitable duty to refrain from interfering with

a state's collection of its revenues. *Tully v. Griffin, Inc., supra; Whitmore v. Bureau of Revenue of State of New Mexico*, 64 F.Supp. 911, 916 (D.N.M.1946).

The issue thus becomes whether Illinois provides a "plain, speedy and efficient remedy" by which plaintiffs can challenge the lawfulness of the statutes and the Department's enforcement procedures. Plaintiffs have made no affirmative showing that their state remedies are inadequate. From our own analysis of the statutory remedies, we are reasonably certain that these relief mechanisms are sufficient for at least some of the plaintiffs.

There are three methods by which plaintiffs can theoretically raise their claims in state court. First, a person charged with unlawful transportation of cigarettes in violation of § 453.9c of the Act can raise his constitutional challenges to the statute as a defense to his criminal prosecution. Criminal proceedings under the Act are initiated by the Attorney General in the state Circuit Court (§ 453.16), and may be reviewed in the appellate courts or by post-conviction relief petitions. *See People v. Richman*, 35 Ill.App.3d 231, 341 N.E.2d 149 (1st Dist. 1975). Second, the claims can be raised as a defense to a civil action by the Department to recover fines or to confiscate the untaxed cigarettes. Section 453.18a provides that the Department "shall hold" a post-seizure hearing before confiscating and forfeiting the illegally transported cigarettes, and section 453.8 provides that the Illinois Circuit Court "shall have power to review all final administrative decisions of the Department in administering the provisions of this Act."

Considering these first two methods in isolation, we note that state remedies are generally adequate if judicial review of administrative decisions is available in state court. *Gray v. Morgan, supra* at 174. However, we are reluctant to hold that persons who desire to purchase and transport untaxed Indiana cigarettes have a "plain, speedy and efficient" means of challenging the statutes by raising their claims as a defense to civil or criminal prosecution.

Purchasers and transporters of untaxed cigarettes may not be sufficiently confident of the validity of their claims to risk criminal or civil liability by violating the law. Furthermore, Indiana retailers would have no access to these defensive mechanisms, since the civil and criminal sanctions are not enforced directly against them. We need not decide the adequacy of state procedures for the defensive assertion of claims, however, since there is a third route open to plaintiffs.

Thus, the claims can be raised offensively in a state civil action for declaratory, injunctive and monetary relief. Indeed, the O'Leary class of plaintiffs have already presented a constitutional challenge to these same statutory provisions in state court. *O'Leary v. Allphin,* 65 Ill.2d 268, 2 Ill.Dec. 324, 357 N.E.2d 491 (1976). Although the decisions turned on questions of statutory construction, making adjudication of plaintiffs' federal constitutional claims unnecessary (*id.* 2 Ill.Dec. at 325, 357 N.E.2d at 492), the Illinois Supreme Court gave no indication that any of those plaintiffs' federal rights would be ignored or precluded if presented in the proper context. We therefore conclude that Illinois provides an adequate remedy to challenge the lawfulness of its taxing policies and practices under the Cigarette Tax Act.

Although the existence of state remedies is clear, we cannot so easily find that all of the plaintiffs here would have the standing to invoke them. We have no doubt that the O'Leary class, comprising those persons who actually transport cigarettes purchased at Indiana retail outlets into Illinois and who are threatened with arrest and confiscation of their property under an ongoing and officially declared enforcement campaign, would have standing to invoke one or more of the state remedial options. As taxpayers, they are directly injured by the enforcement scheme. However, the Czajkowski class, comprised of Indiana cigarette retailers who sell to persons transporting untaxed cigarettes into Illinois, are third parties to the taxing relationship between Illinois and the cigarette transporters. No Indiana cigarette retailer is regulated by the taxing statutes, nor can any Indiana retailer be prosecuted under their terms. These plaintiffs' injuries consist of the decreased sales volume caused by the enforcement of the tax laws against their customers. Consequently, there is substantial doubt as to whether they have standing— and therefore an adequate remedy—under Illinois law. *See Cornelius v. Benevolent Protective Order of Elks,* 382 F.Supp. 1182, 1194 n. 15 (D.Conn.1974).

Although several Illinois courts have discussed the standing of third parties to attack taxing provisions, none has expanded that concept to the extent required here. In *Johnson v. Halpin,* 413 Ill. 257, 108 N.E.2d 429 (1972), a cigarette purchaser challenged a section of the Cigarette Use Tax Act which authorized revenue agents to enter the premises of licensed cigarette distributors without a warrant to examine tax records and cigarette inventories. The court stated that the plaintiff was not entitled to raise this issue since she was not a distributor and hence was unaffected by the statute. 108 N.E.2d at 438. The converse application of this rule was demonstrated in *Martin Oil Service, Inc. v. Department of Revenue,* 49 Ill.2d 260, 273 N.E.2d 823 (1971). There a gasoline distributor challenged a taxing provision which allegedly discriminated against farmers, transit companies and other off-highway gasoline users by subjecting them to higher taxes than other gasoline users. The court held that because the plaintiff was a distributor rather than a gasoline user, he had no standing to raise this issue. 273 N.E.2d at 827. Conceivably the plaintiff in *Martin Oil* could have alleged an indirect economic injury caused by the state's imposition of a proportionately higher tax on the purchases of some of its customers, but the court made no reference to such an injury. Similarly, in *Bloom, Inc. v. Korshak,* 52 Ill.2d 56, 284 N.E.2d 257 (1972), an Illinois company representing wholesalers selling cigarettes to retailers for sale in Chicago challenged the constitutionality of a city ordinance which imposed a tax on all cigarettes sold and used within the city. The court raised,

but declined to resolve, the issue of the company's standing to represent out-of-state wholesalers and purchasers, since the company assured the court that none had joined its action. 284 N.E.2d at 264.

The most liberal grant of third party standing in a tax case occurred in *Commonwealth Edison Co. v. Community Unit School District No. 200,* 44 Ill.App.3d 665, 3 Ill.Dec. 290, 358 N.E.2d 688 (2d Dist. 1976). In that case, a city imposed a tax on the gross receipts of utility companies, who in turn passed the tax on to their customers in the form of higher charges. As its defense to the utility's suit for nonpayment of the additional charges, the defendant-customer attacked the constitutionality of the municipal ordinance. The court held that even though the customer was only indirectly affected by the ordinance, it had a sufficient interest in the controversy to meet standing requirements. The consumer suffered the actual tax burden, while the utility as the initial taxpayer simply added all taxes to the consumer's bill. The court expressed the view that the constitutionality of a tax ordinance can be questioned by persons other than the initial taxpayer. 358 N.E.2d at 690–92.

■ Although *Commonwealth Edison* embodies a somewhat expanded view of standing when compared with the earlier decisions, we believe the standing of the Indiana retailers is sufficiently uncertain to allow them to escape the bar of § 1341. Both the customer in that case and the Indiana retailers here are not the initial taxpayer, but there the similarity ends. The consumer ultimately shouldered the challenged tax burden; the retailers here do not pay any tax bill. The consumer was one link farther down the same financial chain created by the taxing scheme; the retailers here are in a different chain altogether, since the alleged economic effects are felt in terms of reduced sales intake rather than an increased tax bite. Because the retailers fall outside the perimeter of Illinois standing decisions, we are in doubt concerning the availability of their state remedies. Section 1341 does not apply when the existence or adequacy of a state remedy is doubtful or uncertain. *Hillsborough v. Cromwell,* 326 U.S. 620, 625–26, 66 S.Ct. 445, 90 L.Ed. 358; *28 East Jackson Enterprises, Inc. v. Cullerton,* 523 F.2d 439 (7th Cir. 1975), *recon. denied,* 551 F.2d 1093 (1977).

■ In sum, we hold that § 1341 requires the O'Leary class of cigarette purchasers to first seek relief from the challenged statutes and enforcement scheme in the Illinois courts. The complaint is dismissed as to them. We retain jurisdiction to evaluate the claims of the Czajkowski class of Indiana retailers.

## B. Standing

■ Defendants next contend that the Indiana retailers lack standing under federal law to pursue their constitutional attack on the state statutes in federal court, because the alleged indirect economic impact on these plaintiffs is too attenuated to warrant their invocation of federal jurisdiction. At the outset, we note that "state law of standing . . . does not govern such determinations in the federal courts." *Arlington Heights v. Metropolitan Housing Development Corporation,* 429 U.S. 252, 262 n. 8, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977). Illinois may choose to close its courts to these retailers, "but this choice does not necessarily disqualify [them] from seeking relief in federal courts for an asserted injury to [their] federal rights." *Id.*

■ Under federal law, the major standing inquiry focuses on whether plaintiffs have alleged an actual or threatened injury to themselves that is likely to be redressed by a favorable decision. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Plaintiffs must show that they are injured, and that that injury is "fairly traceable" to the challenged action of the defendants. *Arlington Heights, supra,* 429 U.S. at 261, 97 S.Ct. 555. Furthermore, plaintiffs must generally assert their own legal rights rather than the rights of third persons. *Warth v. Seldin,* 422 U.S.

490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

■ We have little doubt that plaintiffs have alleged a sufficient injury to create a personal stake in the outcome of this controversy. Their complaint alleges that defendants' enforcement of the challenged statutes has prevented or inhibited casual purchases of cigarettes by westbound travelers. The retailers' claimed economic losses resulting from this inhibition allegedly amount to 12 million dollars annually. The existence of an adequate injury is not in doubt. Nor can we discount the causative relationship between defendants' alleged action and plaintiffs' claimed injury. The threat of criminal prosecution which supposedly hangs over the heads of interstate purchasers is clearly adequate to chill the temptations of the most ardent bargain-hunter. Although the defendants' enforcement activity is directed at the purchasers rather than the retailer, the impact on business sales is indirect but inevitable. If we enjoin enforcement of the Illinois statutes against Indiana cigarette purchases by westbound travelers, we are reasonably certain that the lure of lower prices and absence of Illinois tax liability will lead to increased sales by the Indiana merchants. Therefore, plaintiff-retailers have a sufficiently concrete stake in the outcome of their litigation to create a case or controversy within a federal court's Article III jurisdiction.

■ The more difficult task lies in defining the rights which the retailers may assert in resolving that controversy. To the extent that the Indiana retailers have alleged an infringement of their own legal rights and interests, they can assert them. *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976). Thus, we have no problem in recognizing these plaintiffs' standing to raise claims that defendants have violated their rights under § 1983 and the Sherman Act. We have described these legal theories earlier in this opinion. *See* pp. 1270–1271 *supra.* Our attention, and defendants' standing argument, is focused on the retailers' standing to attack the constitutionality of the two Illinois statutory sections. That attack mixes the constitutional claims of customers and retailers. Since we have applied § 1341 to limit the customers to their state court remedies, we are confronted with the retailers' assertion of the constitutional claims of third parties.

■ As a general rule, "federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation." *Singleton, supra* at 2874. The Supreme Court has identified two general types of situations in which litigants may escape the confines of this rule and assert the rights of third persons: 1) cases in which there is a close relationship between the litigant and the third person and 2) cases in which the third person is somehow disabled from asserting his own rights. *Id.* at 2874–75. Here the retailers' customers are disabled by § 1341 from raising their claims in federal court, but we have no grounds for believing that they will be unable to adequately protect their federal rights in state court on their own. In fact, such a challenge has already been partially effected. *See O'Leary v. Allphin, supra.* Thus, it is unlikely that a failure to entertain the derivative assertion of their claims by the retailers will leave the customer's constitutional rights unheard and unprotected.

Nevertheless, the customer-retailer relationship here is one in which third party standing is warranted. The gravamen of the retailers' complaint is that enforcement of the challenged statutes against the third party-customers infringes the constitutional rights of both groups and causes indirect economic injury to the retailers' businesses. *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), is the leading case on the standing of litigants who suffer indirect injury by the enforcement of a legal duty on third parties. In *Pierce,* two private schools challenged a state statute which imposed criminal liability on parents who failed to send their children to

public school. Although the statute operated directly only on the parents of schoolchildren, the inevitable result of statutory enforcement would have been to deprive private schools of their patrons and destroy their financial support. In invalidating the statute, the Court permitted the schools to assert the constitutional rights of the parents to control the education of their children.

█ *Pierce* is controlling here. In both instances, a business is asserting the constitutional rights of its patrons who are threatened by statutory prohibitions. Both prohibitions indirectly threaten the financial bulwark of the litigant's business. And in both cases "the [patron's] enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue . ." *Singleton, supra* at 2874. Statutory enforcement of compulsory attendance and cigarette taxing statutes operates to limit third parties in the alleged exercise of their constitutional rights by restricting available outlets for educational or economic services. That constitutional deprivation creates economic injury to the litigants. The two forms of injury are mutually interdependent. In these circumstances, it is likely that the litigant is as effective an advocate for the claimed legal rights as is the third party. *Singleton, supra* at 2874. We therefore hold that the Indiana retailers can assert the rights of their customers who are threatened with enforcement procedures under the two statutes in question.[5]

### C. Constitutional Insubstantiality

The State of Illinois argues that the plaintiffs' constitutional challenges to the state statutes do not present a federal question of sufficient substance to support federal jurisdiction. It contends that state courts in other jurisdictions have generally upheld similar statutes as against constitutional claims that they burden interstate commerce, violate equal protection, or deny due process. *See* Annot., 46 A.L.R.3d 1342 (1972). The State also cites a number of general principles gleaned from Supreme Court decisions to support its conclusion that "Illinois has engaged in a reasonable exercise of its police power."

In *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), the Court canvassed the decisions construing the substantiality doctrine. Those cases hold that federal courts are without jurisdiction to entertain claims otherwise within their jurisdiction if they are "wholly insubstantial," "obviously without merit," or "essentially fictitious." 415 U.S. at 536–38, 94 S.Ct. 1372. Expanding upon these shorthand phrases, the Court explained that ". . . claims are constitutionally insubstantial only if the prior decisions *inescapably* render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial . . ." *Id.* (emphasis added).

█ We have examined the cases cited by the State, and although they tend to be uniformly and cumulatively adverse to

---

**5.** Our holding is in conflict with the theories of one commentator. *See* Note, *Standing to Assert Constitutional Jus Tertii*, 88 Harv.L.Rev. 423, 431–36 (1974). In analyzing *Pierce*, the note draws a distinction between cases in which the constitutional deprivation suffered by the third party is augmented by the litigant's own injury, and those in which the constitutional deprivation is caused solely by the imposition of a statutory duty on the third party. Only in the first case would third party standing be appropriate. Thus, in *Pierce*, the schools properly had standing since their injury (the closing of their institutions) would have compounded the parents' constitutional deprivation by reducing the number of available educational options. The note perceives two infringements of the parents' constitutional rights: by the direct statutory prohibition, and by the closing of the schools. By this analysis, the retailers here would not have standing, since their injury (a reduction in sales revenues) would not shut down their businesses completely and therefore would not cause any deprivation of their customers' constitutional rights in addition to the deprivation caused by the statutory restrictions themselves. In our minds, this distinction does not withstand analysis, because in both cases the third parties have suffered a constriction of their available outlets for exercise of their constitutional rights and that constriction is inextricably tied to the enforcement of the challenged statutes.

plaintiffs' claims, the applicability of their reasoning to the present issues is not immediately obvious, nor do they render plaintiffs' cause of action patently without merit. Neither the Illinois nor the federal courts appear to have addressed the precise questions raised by the complaint. The State's arguments merely analogize from principles stated in other decisions to sustain their conclusion that Illinois' statutes are constitutional. They are not focused on establishing the obvious frivolity of plaintiffs' claims, nor on demonstrating their "inescapable" inconsistency with prior precedent. Although we may have doubts concerning whether plaintiffs will prevail, the constitutional claims are not so obviously insubstantial or frivolous that the existence of a federal controversy is negated.

### D. Eleventh Amendment

The last jurisdictional objection is that the Eleventh Amendment bars plaintiffs from bringing this suit against the State of Illinois. We agree. By its literal terms, the Amendment prohibits suits against a state in a federal court by citizens of another state. Although this prohibition is avoided where the state consents to suit in federal court or where the complaint only seeks to restrain unconstitutional conduct of state officials acting under color of state law, neither of these exceptions apply here. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); 13 Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction § 3524. Therefore, the State of Illinois is dismissed from this action.

### II. Res Judicata and Collateral Estoppel

We now turn to defendants' last threshold argument, namely that plaintiffs' complaint is barred by the doctrines of res judicata and collateral estoppel. The State of Illinois argues that the Illinois courts have previously ruled on the constitutionality of the two statutory sections questioned here in a civil action brought by the same class of plaintiffs as that represented by plaintiff O'Leary in this action. The argu-

ment is without merit. The state trial court specifically disavowed any intention of engaging in constitutional adjudication, stating "[i]t is not necessary, nor does this Court say Section 453.9c or 453.18 is unconstitutional." (Amended Injunction Order, ¶ 11, *O'Leary v. Allphin,* Circuit Court of Cook County, No. 74 CH 1378). On appeal, the Supreme Court of Illinois gave the same interpretation to the lower court's ruling, stating that "neither the trial court nor the appellant court passed upon the constitutionality of any of the statutory provisions involved in this case." *O'Leary v. Allphin,* 65 Ill.2d 268, 2 Ill.Dec. 324, 325, 357 N.E.2d 491, 492 (1976).

### III. Failure to State a Claim for Relief

#### A. Section 1983

Defendants contend that the complaint does not state a proper claim for relief under any legally cognizable § 1983 theory. Their arguments are directed at demonstrating that plaintiffs' factual allegations do not give rise to any actionable violation of the cited constitutional provisions. Even assuming the merit of these arguments, we discern a more fundamental defect with plaintiffs' § 1983 claims. We find that constitutional challenges to the collection or validity of state taxes form a special class of cases which fall outside the jurisdictional parameters of 28 U.S.C. § 1343(3). Because § 1343(3) is the "jurisdictional counterpart" to civil rights actions under § 1983, and because "both sections are construed identically," *Lynch v. Household Finance,* 405 U.S. 538, 543 n. 7, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), the inapplicability of § 1343(3) is automatically fatal to plaintiffs' § 1983 claims.

In order to clearly perceive the limited scope of § 1343(3) jurisdiction, it is necessary to briefly trace the varying judicial interpretations which have been given to that section over its lifespan. Before 1972, Section 1343(3) was widely viewed as applying only to infringements of "personal liberty" rather than "property rights." *See, e. g., Eisen v. Eastman,* 421 F.2d 560, 563–66 (2d Cir. 1969). The source of this formula-

tion was Justice Stone's concurring opinion in *Hague v. C. I. O.,* 307 U.S. 496, 531, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), in which he used this distinction as a means of rationalizing and limiting the apparently broad overlap between the jurisdictional grants embodied in sections 1331 and 1343 of Title 28. The Stone formula had the virtue of explaining three earlier decisions in which the Supreme Court had denied § 1343(3) jurisdiction over actions to enjoin the collection of state taxes. *Carter v. Greenhow,* 114 U.S. 317, 5 S.Ct. 928, 29 L.Ed. 202 (1884); *Pleasants v. Greenhow,* 114 U.S. 323, 5 S.Ct. 931, 29 L.Ed. 204 (1884); *Holt v. Indiana Manufacturing Co.,* 176 U.S. 68, 20 S.Ct. 272, 44 L.Ed. 374 (1900). *Holt* noted that § 1343(3) ". . . refer[s] to civil rights only, and [is] inapplicable here." 176 U.S. at 72, 20 S.Ct. at 273. In more recent cases, lower courts consistently applied the Stone distinction to deny jurisdiction in cases challenging the constitutionality of state taxes, explaining that such cases involve "property" deprivations beyond the pale of § 1343(3). *See, e. g., Bussie v. Long,* 383 F.2d 766 (5th Cir. 1967); *Gray v. Morgan,* 371 F.2d 172 (7th Cir. 1966), *cert. denied,* 386 U.S. 1033, 87 S.Ct. 1484, 18 L.Ed.2d 596 (1967); *Hornbeak v. Hamm,* 283 F.Supp. 549 (M.D.Ala.), *aff'd,* 393 U.S. 9, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968); *Alterman Transport Lines v. Public Service Comm'n,* 259 F.Supp. 486 (M.D.Tenn.1966), *aff'd per curiam,* 386 U.S. 262, 87 S.Ct. 1023, 18 L.Ed.2d 39 (1967); *Abernathy v. Carpenter,* 208 F.Supp. 793 (W.D.Mo.1962) (alternate ground), *aff'd per curiam,* 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409 (1963).[6] In other contexts, however, the Stone formula proved largely unworkable, with courts reaching conflicting results in cases with a mix of personal and property rights.

In the 1972 decision in *Lynch v. Household Finance, supra,* the Court authoritatively defined the scope of § 1343(3). It expressly rejected the Stone distinction between personal liberties and property rights, and found that both are encompassed within the contours of that section. To reach this holding, however, the Court was required to overrule or distinguish the earlier state tax cases which had supported the *Hague* formulation. The Court opted for the latter route, explaining that its earlier decisions and affirmances of lower court decisions were not a tacit approval of the personal liberty-property rights distinction. Instead, the court emphasized that all of these decisions involved constitutional attacks on the collection of state taxes and could be seen as consistent with Section 1341's restriction on federal interference with the enforcement of state tax laws. 405 U.S. at 542 n. 6, 92 S.Ct. 1113. Treating these decisions as a "special class of cases," the Court clearly suggested that they will continue to be an inappropriate subject for § 1343(3) jurisdiction.

Although the Court's harmonizing of the tax cases with the command of § 1341 is generally solid, in some of those decisions § 1341 could not have offered an alternate basis for dismissal on jurisdictional grounds. Thus, the three pre-*Hague* cases, *Holt, Pleasants,* and *Carter,* were decided prior to § 1341's enactment. And in at least one of the later cases, *Hornbeak,* § 1341 may not have been a bar since the plaintiff claimed the absence of an adequate state remedy. 283 F.Supp. at 554. Unavailability of state remedies removes the jurisdictional obstacles created by § 1341. Hence, it appears that the limitations on § 1343(3) jurisdiction provided the

---

**6.** In reviewing these decisions, Judge Friendly remarked in *Eisen v. Eastman, supra* at 564, that:

> Attacks on the constitutionality of state tax statutes rather plainly fall beyond [§ 1343(3)], and one of [the] virtues [of Justice Stone's distinction] is in excluding them.

Later, Judge Friendly adds that:

> It is quite hard to believe . . . that the framers of either of § 1 of the Civil Rights

Act of 1871 or of its successors would have thought the statute could be invoked by a person complaining of state taxes allegedly barred by the Commerce Clause. 421 F.2d at 566.

Although these remarks are clearly *dicta,* and *Eisen* has been almost completely overruled by *Lynch,* they are especially pertinent to this case, since plaintiffs include a Commerce Clause claim in their § 1983 allegations.

sole basis for dismissal in those cases. The Supreme Court's reaffirmation of the results of those decisions in *Lynch* convinces us that § 1343(3) may still be applied as an independent ground for declining jurisdiction over constitutional challenges to the collection of state taxes, even absent a clear bar under § 1341. Therefore, we conclude that plaintiffs' § 1983 claims fail for want of a jurisdictional basis under § 1343(3). *See* Note, 24 Stanford L.Rev. 1134 (1972); Note, 86 Harv.L.Rev. 201 (1972).

### B. Sherman Act

■ In their complaint, plaintiffs allege that defendants have conspired to restrain interstate commerce and destroy their businesses by enforcing the Cigarette Tax Act and by promulgating "unconscionable" regulations for the issuance of permits. State officials allegedly began these activities "at the urging" of the Association, which used political influence and campaign contributions to encourage enforcement of the Act, thereby protecting its own economic interests and harming those of Indiana tobacco retailers. Defendants contend these allegations fail to state a claim under the antitrust laws, because the Sherman Act does not apply to restraints of trade or monopolization that are the result of valid governmental action by state officials. *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Nor does it apply if they are the result of concerted efforts by private groups or citizens to induce or influence such governmental action (the *Noerr-Pennington* doctrine). We agree.

In *Parker v. Brown, supra,* the Supreme Court held that the Sherman Act was not intended to apply against certain state action. In *Parker*, a producer and packer of raisins brought suit against California officials to enjoin their enforcement of a state marketing program for raisins. The program, which had been created by state statutes, was designed to maintain prices in the raisin market by reducing competition among growers. In concluding that the program was immune from antitrust attack, the Court stated that the Sherman Act was never intended to ". . . restrain a state or its officers or agents from activities directed by its legislature," 317 U.S. at 350–51, 63 S.Ct. at 313, even though the same activities would have been unlawful if practiced by private businesses or individuals.

■ Since *Parker*, the courts have undertaken to refine the distinction between exempt state action and non-exempt private action. Courts have recognized that some "public" activities, such as the purchase of equipment for governmental facilities, involve purely commercial dealings between business and government. *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 424 F.2d 25, 31 (1st Cir. 1970). In these circumstances, the mantle of state sovereignty is removed and the state activities will be subjected to antitrust scrutiny. On the other hand, "private" anticompetitive activity by non-governmental businesses may receive *Parker* immunity if those activities are "compelled by direction of the State acting as a sovereign." *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 791, 95 S.Ct. 2004, 2015, 44 L.Ed.2d 572 (1975); *Canter v. Detroit Edison Co.*, 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976). In every case, careful analysis is required to ensure that the challenged action is a bona fide governmental decision. The antitrust inquiry does not end just because action by a public official is shown. *Kurek v. Pleasure Driveway & Park Dist.*, 557 F.2d 580, 589 (7th Cir. 1977).

■ The cases indicate that the state action exemption is more likely to be applied where the plaintiffs' claim is directed against a public official or public agency rather than a private party, *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 2697, 53 L.Ed.2d 810 (1977), where the challenged activities flow from an affirmative command of the legislature rather than the acquiescence of a state regulatory agency, *id.* at 2698, where the governmental unit concerned is the state itself rather than municipality or other subordinate state governmental body, *Kurek, supra* at 589–90, and where the state program is enacted for

the public good rather than to further private financial objectives. *Whitworth v. Perkins*, 559 F.2d 378, 380 (5th Cir. 1977). All of these criteria conjoin to call for the application of the *Parker* doctrine in this case.

■ First, plaintiff's claims are directed primarily against the state and its officials. The defendants are the State of Illinois, its former Governor, the director of its Department of Revenue, employees of that department, and a trade association. The inclusion of the association does not dilute the strength of the state action, since the association is only charged with encouraging or inducing the governmental activities of the other defendants.

Second, because the challenged activities were allegedly performed by the state itself rather than a subordinate political subdivision, stronger principles of federalism and comity apply and the grip of the Sherman Act on such conduct grows correspondingly weaker. Statewide programs are entitled to more federalistic deference than local activities. *Kurek, supra* at 589–90.

Third, Illinois statutes compel the Department of Revenue to assess and collect all taxes due. Ill.Rev.Stat., ch. 120, §§ 453.-9a and 453.9b. Plaintiffs' complaint concerns governmental activities which are aimed at assuring compliance with this legislative mandate and which are specifically authorized by the statutes, *i. e.*, the promulgation of a permit procedure for transporting cigarettes (§ 453.9c), the warrantless search and seizure of illegally transported cigarettes (§ 453.18), and the forfeiture and confiscation of those cigarettes (§ 453.9c). Although those permit, seizure and confiscation powers are phrased in terms which permit rather than require the Department to exercise them, they are direct incidents of a compulsory taxation program. As in *Parker*, the state's enforcement program "derived its authority and its efficacy from the legislative command of the state and was not intended to operate or become effective without that command." 317 U.S. at 350, 63 S.Ct. at 313. Furthermore, in discharging their enforcement powers under the statutes, the defendant state officials are acting within a traditional sphere of state sovereignty—the state's power to tax and raise revenue. Ill.Const. art. IX, § 1.

Fourth, the enforcement program is ostensibly designed to further the general public welfare rather than to achieve more limited financial benefits for a narrow class of private individuals. Therefore the governmental activities challenged here are outside the scope of the antitrust laws. *Parker v. Brown, supra.*

■ If the governmental activities are immune from antitrust attack, the officials charged with performing those activities normally enjoy the same protection. However, that shield may be lifted if the officials have acted in bad faith or outside the scope of their authority. *Kurek, supra* at 591. The complaint does not specifically allege either of these grounds. Plaintiffs do claim that their customers have been "harass[ed]" and "intimidate[d]" and that defendants' conduct is "unconscionable," but neither of these allegations constitutes bad faith. They also claim that the director of the Department of Revenue is an "agent" of the trade association, and that the enforcement courts handling violators of the revenue laws are "run by the Department of Revenue." These conclusory allegations, unsupported by any factual detail, are inherently incredulous and cannot support a claim of ultra vires conduct. The only colorable claim of official abuse of statutory authority is raised by the allegation that defendants' policies and practices are not designed to enforce the revenue laws, but rather are part of a conspiracy between Illinois officials and Illinois tobacco retailers to drive Indiana retailers out of business. But an anticompetitive motive is not enough to convert official action into a violation of the Sherman Act. *Parker v. Brown, supra; Ernest W. Hahn, Inc. v. Codding*, 423 F.Supp. 913 (N.D.Cal.1976).

■ In addition to invoking the *Parker v. Brown* exemption for valid governmental action, defendants contend that plaintiffs' Sherman Act claims are foreclosed by the doctrine announced in *Eastern Railroad*

*Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and refined in *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1975). *Noerr* and *Pennington* established the general rule that joint efforts by businessmen and private individuals to induce or influence the passage or enforcement of laws do not violate the antitrust laws, even though intended to eliminate competition or otherwise restrain trade. The rule is based on the policy that public participation in the legislative process must be encouraged at the expense of injury to competition, for otherwise the functions of representative democracy would be impaired. There is a "sham" exception to the *Noerr* rule. To be immune, the concerted conduct must be a genuine effort to influence governmental action and not a "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." 365 U.S. at 144, 81 S.Ct. at 533.

The conduct attacked here falls within a political setting covered by the *Noerr* doctrine. The complaint alleges that the Illinois Association of Tobacco and Candy Distributors used its political influence and campaign contributions to former Governor Walker in order to induce governmental action favorable to itself and harmful to Indiana retailers. The association and state officials allegedly conspired to enforce the cigarette taxing statutes against those retailers' customers, thereby injuring their businesses.

■ These allegations of campaign contributions and a conspiracy among private persons and private officials raise issues which were left undecided in *Noerr* and *Pennington,* since both involved suits against private parties rather than governmental entities or officials. In addition, *Parker* specifically reserved judgment on the legality of combinations of public and private entities. 317 U.S. at 351–52, 63 S.Ct. 307. However, the Seventh Circuit recently reached both questions in *Metro Cable Co. v. CATV of Rockford, Inc.,* 516 F.2d 220 (7th Cir. 1975). In *Metro Cable,* an unsuccessful applicant for a cable television

franchise brought an antitrust action alleging that the successful applicant conspired with city officials to prevent plaintiff from receiving the cable TV franchise and paid these officials substantial campaign contributions in exchange for their support. In holding that *Noerr* and *Pennington* immunized the challenged conduct from antitrust attack, Judge Tone held that campaign contributions are a part of the political process and do not affect the *Noerr* exemption. 516 F.2d at 230–31. The court also held that legislative officials do not become "co-conspirators" in an illegal antitrust scheme by agreeing to support anticompetitive legislative actions which are urged by plaintiff's business rival. 516 F.2d at 229–30. The court stated:

> Plaintiff's position in essence is that an agreement to attempt to induce legislative action is a "conspiracy," and that if some of the "conspirators" persuade a member of the legislative body to agree to support their cause, he becomes a "co-conspirator" and a Sherman Act violation results. Such a rule would in practice abrogate the *Noerr* doctrine. It would be unlikely that any effort to influence legislative action could succeed unless one or more members of the legislative body became such "co-conspirators." 516 F.2d at 230.

On the other hand, where the complaint goes beyond mere allegations of official persuasion by anticompetitive lobbying and alleges official participation with private individuals in a scheme to restrain trade, the *Noerr* doctrine is inapplicable. *Duke & Company, Inc. v. Foerster,* 521 F.2d 1277, 1282 (3d Cir. 1975).

■ Applying these principles to the case before us, we believe that neither the alleged agreement between state officials and the association to enforce the taxing statutes, nor the campaign contributions allegedly used to encourage such enforcement, are actionable under the Sherman Act. As in *Metro Cable,* the campaign contributions here were allegedly designed to support the donor's interests in legislative and executive processes. And the alleged conspiracy between private and public bod-

ies consists solely of political lobbying, "urging," and influence-peddling, without any inkling of official participation in a privately-sponsored anticompetitive scheme.

. Nor do we believe that plaintiffs' complaint fits within the sham exception to the *Noerr* doctrine. That exception applies where a competitor uses concerted political efforts as a pretext or "smokescreen" to injure its rivals directly rather than through governmental action. For example, in the leading Supreme Court decision on this exception, *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642, the defendants had allegedly conspired to deter their competitors in the trucking industry from seeking new or expanded operating rights before state and federal regulatory agencies by opposing every application at all stages of review, regardless of its merits. The alleged result was that plaintiffs were effectively barred from access to the agencies and the courts. The Court held that the alleged conduct was not a genuine effort to influence public officials, but a mere pretext for inflicting on plaintiffs an injury not caused by any governmental action. Unlike the injury to plaintiffs in *California Motor Freight*, the alleged injury to plaintiffs in this case is caused by the enforcement activities of the state officials which the association supposedly attempted to induce the state to carry out. *See Metro Cable, supra* at 229. There is no allegation that the association's political campaign is a sham which disguises attempts to directly interfere with its competitors. On the contrary, the crux of plaintiffs' complaint is that those lobbying efforts have been genuinely successful with the executive branch of state government and that this success has led to governmental action inuring to the indirect benefit of the association. Consequently, the principles enunciated in *Parker, Noerr* and *Pennington* lead us to conclude that none of the conduct challenged in the complaint is covered by the Sherman Act.

### IV. Conclusion

To summarize our holding, we have concluded that the defendant State of Illinois and the O'Leary class of plaintiffs must be dismissed as parties, that the complaint fails to provide an adequate jurisdictional basis for its § 1983 claims, and that it fails to state a claim for relief under the Sherman Act. The allegations of the complaint which remain intact are those challenging the constitutionality of §§ 453.9c and 453.18 of the Cigarette Tax Act on its face and as applied. The defendants' motions to dismiss are granted in part and denied in part, in conformity with this result. Defendants are ordered to answer the outstanding allegations of the complaint within 20 days, and thereafter promptly move for summary judgment on the issues of the constitutionality of §§ 453.9c and 453.18 of the Cigarette Tax Act.