EUTECTIC CORPORATION, New Metals Corporation, and Metallizing Company of America, Inc., Plaintiffs,

v.

METCO, INC., Defendant.

No. 80 C 268.

United States District Court, E. D. New York.

Dec. 18, 1980.

Hopgood, Calimafde, Kalil, Blaustein & Lieberman, New York City by John M. Calimafde, Marvin N. Gordon, New York City, for plaintiffs.

Sprung, Felfe, Horn, Lynch & Kramer, New York City, for defendant; Arnold Sprung and Nathaniel D. Kramer, New York City, Salvatore A. Giarratana, Norwalk, Conn., of counsel.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This is an action by an adjudged patent infringer to set aside a judgment of patent validity alleged to have been obtained by a fraud committed on the court, and to recover treble antitrust damages resulting from defendant's allegedly fraudulent enforcement of the patents held valid. In its original action, 72 C 102, plaintiff Eutectic Corporation ("Eutectic") sought a declaratory judgment that defendant's ("Metco") patents, which disclose a novel flame spraying powder and process, were invalid and not infringed by Eutectic's flame spray materials. After trial this court entered a judgment declaring the patents valid but not infringed, 418 F.Supp. 1186 (E.D.N.Y.1976). Upon appeal by both parties the Court of Appeals affirmed the finding of patent validity but reversed the determination of noninfringement, concluding independently that the evidence amply demonstrated infringement. 579 F.2d 1 (2d Cir.), cert. denied, 439 U.S. 867, 99 S.Ct. 192, 58 L.Ed.2d 177 (1978). Pending denial of the petition for certiorari, and following the denial of Eutectic's petition for rehearing and its subsequent motion to recall the decision on the petition for rehearing, the Court of Appeals' mandate issued. In accordance therewith, this court entered an interlocutory judgment on July 13, 1978 which adjudged the patent claims valid and infringed, enjoined future infringement after July 31, 1978, dismissed the claim for declaratory relief and directed an accounting of Metco's damages.

During the accounting proceeding Metco produced to Eutectic a sequence of three documents which discuss two prereacted nickel aluminum powders sold by a Metco competitor, Alloy Metals, Inc. ("AMI"). Under the subject heading "AMI Self-bonding powders" the earliest document reported the market presence of the powders and recommended further study of their bond strengths and chemistry. A final memorandum discussed Metco's engineering analysis, the subject of the second document, also under the subject heading "Self-Bonding Competitive Powders." This memorandum stated that the bonding tests, which were conducted after the powders were sprayed in plasma onto both ground and blasted substrates, showed that the AMI powders "will achieve bond strengths equivalent" to Metco's exothermically reacting nickel aluminum powder. Observing, however, that the AMI powders "are alloys" the author doubted that either AMI powder "would exhibit any self-bonding" sprayed through an oxyacetylene gun.

Thereafter Eutectic filed the present action, 80 C 268, to set aside and be relieved from the July 13, 1978 judgment.[1] According to Eutectic, the recently produced documents described above establish that in 1970 Metco knew of other "self-bonding" flame spray materials, long before 1973 when Eutectic asked Metco in Interrogatory No. 52(b) to "[i]dentify all self-bonding spray flame materials [then] known" to Metco, to which Metco answered only "Molybdenum and the nickel aluminum exothermic materials." Eutectic's present complaint charges that Metco's answer to Inter-

1. Although denominated "interlocutory" the July 13 judgment unquestionably was final with respect to Eutectic's original demand for declaratory relief of invalidity and noninfringement.

In addition to its efforts to obtain reversal in the Court of Appeals and the Supreme Court, Eutectic filed an earlier Rule 60(b) motion the dismissal of which the Court of Appeals affirmed, commenting that the motion was "yet another attempt to obtain a reversal of [the] determination ... that certain claims of appellee's patents in suit were valid and that appellants had infringed ...." 597 F.2d 32, 33 (2d Cir. 1979). That comment holds true here, too.

rogatory 52 and Metco's contentions at trial that self-bonding was unique to the patented composite powders, and that an exothermic reaction was necessary to achieve self-bonding, were, in light of the above documents, knowingly false and constituted a fraud upon this court which led it and the Court of Appeals to uphold the validity of the patents.

In a second claim, Eutectic charges that Metco has monopolized and attempted to monopolize the market for flame spray materials through fraudulent enforcement of its patents against Eutectic and others, and through causing the leading consumers of flame spray materials to specify the Metco composite powders. Eutectic seeks as damages three times the profits it has lost since the injunction against infringement took effect.

Presently before the court are Eutectic's appeal from a magistrate's order staying discovery in the new action, and Metco's motion for an order summarily dismissing the entire complaint. For the reasons given below, summary judgment is granted in Metco's favor dismissing both claims in the new action, and the magistrate's order is affirmed.

*The Fraud Claim*

At the outset there is doubt whether the misconduct alleged in Eutectic's complaint may be viewed as a fraud upon the court. Nevertheless, whatever may be the correct characterization of that conduct, there is no genuine issue that the prereacted nickel aluminum powders do not self-bond. Because that conclusion removes any issue that Metco's interrogatory answer or contentions at trial could be considered fraudulent, it is appropriate to grant judgment to Metco dismissing Eutectic's fraud claim.

Even if relevant to the material issues of the nonobviousness and novelty of the patented inventions in relation to the prior art,[2] the newly produced documents simply do not establish that a fraud was committed on this court. Admittedly, they identify the AMI prereacted nickel aluminum powders as "self-bonding," and the expectation expressed in the final memorandum that the powders would not "exhibit any self-bonding in ThermoSpray" fairly suggests as well that the Metco author considered the AMI products to be self-bonding when sprayed in plasma. Nonetheless, the record amply shows that the prereacted nickel aluminum powders do not self-bond in the sense that the witnesses at trial, this court and the Court of Appeals all understood that term to mean, *viz.*, that the powder will adhere to a smooth, clean surface in an as-sprayed condition, *i. e.*, with all the types of flame spray equipment, oxyacetylene as well as plasma type guns. See 418 F.Supp. at 1198, 1202. Eutectic's materials engineer Patel tested the prereacted nickel aluminum powders, spraying them through a non-plasma type gun, and he testified that the prereacted powders he sprayed did not self-bond (Tr. 831–32; 840–41; 845–47), which Dr. Ingham of Metco confirmed (Tr. 1754–55).

Furthermore, nothing in the newly produced documents described above, or any of Eutectic's other materials or arguments, presents any issue that if the prereacted nickel aluminum powders do not self-bond within the accepted meaning of the term, that the definition was adopted in error or by fraud. At most, the "previously withheld" documents show that spraying the prereacted nickel aluminum powder in plasma achieves an alloyed, *i. e.*, chemical as opposed to mechanical, bond between the flame spray coating and a smooth, clean substrate. Although this metallurgical fact may lend credence to Eutectic's insistence that all bonding including "self-bonding" is merely a function of the material sprayed and the system used to spray it (see Aqua Affidavit of April 29, 1980, ¶¶ 5, 6), the argument detracts nothing from the significant facts that the composite powders through their exothermic reaction will adhere to a smooth, clean substrate, whatever flame spray technique is employed, and the prereacted powders will not.

---

**2.** As Metco observes, the documents are dated September 1970, ten years after the date of the inventions which are the subject matter of the patents.

76

Undoubtedly because this court found nothing to defeat the validity of the patents in the fact that a plasma-sprayed metallic powder can achieve a chemical bond, and did not accept the argument Eutectic made on that basis in its post-trial brief, Eutectic seeks to bolster its position by offering the affidavit of its Vice-President for Science and Technology, Dr. Edward Aqua. Dr. Aqua asserts that the prereacted powders do "self-bond," as he understands that term, when sprayed through an oxyacetylene gun as well as through a plasma system, but the crucial factor in his conclusion is that he sprayed the prereacted powder onto a "conventionally treated" surface, i. e., one roughened through grit blasting (Aqua Aff., ¶¶ 9, 7).

Dr. Aqua justifies the testing procedure he followed by attacking the accepted definition of self-bonding with the observation that its requirement "that the flame spraying be performed on a smooth, clean surface, is contrary to the commercial practice." (Aqua Aff. ¶ 7.) It is true that many users of Metco's composite powders roughen the spraying surface to obtain greater bond strengths, but Dr. Aqua's contention ignores the ample record evidence that for numerous applications grit blasting is undesirable because of expense or the difficulty of doing it well. This contention, like Eutectic's fraud claim, merely underscores the fact that Eutectic will not admit in court what its infringing conduct acknowledged to the market, that the composite powders were a significant invention because they adhere to a smooth clean surface, for example, a jet engine's, under all flame spraying conditions.

*The Antitrust Claim*

For its claim under § 2 of the Sherman Act, 15 U.S.C. § 2, Eutectic initially incorporates its fraud allegations and alleges further that there exists a relevant market for flame spray materials from which it has been excluded since the injunction against infringement took effect; that Metco is presently the largest manufacturer and seller of flame spray materials in the United States and has caused, through its dominant

position, the leading consumers of flame spray materials to specify only the nickel aluminum composites at the time Metco allegedly was aware that prereacted nickel-aluminum powders provided a "fully equivalent" substitute; that the manufacturers of these other prereacted nickel aluminum products have withdrawn their products from the market which has led to higher prices for flame spray materials; and finally that Metco has monopolized and continues to attempt to monopolize the market for flame spray materials through fraudulent enforcement of its patents against Eutectic and its other major competitor.

In light of the disposition of Eutectic's fraud claim, the allegations of a § 2 violation based upon enforcement of fraudulently obtained patents must be dismissed. The remaining allegations that by virtue of its dominant position Metco has caused the leading users of flame spray materials to specify the Metco powders to the detriment of manufacturers of other flame spray materials and the public, do not state a claim for relief under the Sherman Act absent a showing that Metco used improper selling methods or coercion to achieve that result. See 3 P. Areeda & D. Turner, Antitrust Law ¶ 738b at 279–80 (1978); *George R. Whitten Jr., Inc. v. Paddock Pool Builders Inc.*, 508 F.2d 547, 558 & nn.18, 19 (1st Cir. 1974), *cert. denied*, 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975); *Security Fire Door Co. v. County of Los Angeles*, 9th Cir., 484 F.2d 1028, 1030–31. No such showing has been made here.

*Appeal from the Denial of Discovery*

Eutectic was entitled to discovery on its fraud claim only if it provided satisfactory proof that fraud on the court actually was committed, see *H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119, 1122 (6th Cir. 1976). The magistrate properly stayed discovery pending resolution of Metco's motion for summary dismissal which tested the sufficiency of the proof Eutectic did present. On the basis of the disposition of Eutectic's fraud claim the magistrate's order is affirmed.

In summary, because Eutectic's fraud claim is meritless, and its remaining antitrust allegations do not state a claim for relief, the magistrate's discovery stay is affirmed and judgment is awarded Metco dismissing the complaint.

SO ORDERED.

The Clerk of Court is directed to forward copies of this memorandum and order to counsel for the parties.