**RICHARD HOFFMAN CORPORATION,**
Plaintiff,

v.

**INTEGRATED BUILDING SYSTEMS, INC., and Village of Glendale Heights, A Municipal Corporation, Defendants.**

No. 83 C 5612.

United States District Court,
N.D. Illinois, E.D.

Feb. 15, 1984.

Gerald C. Bender, Chicago, Ill., for plaintiff.

John T. Duax, Mark L. Hellner, Schwartz & Freeman, John Murphey, Ancel, Glink, Diamond, Murphy & Cope, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Richard Hoffman Corporation ("Hoffman") sued Integrated Building Systems, Inc. ("Integrated") and the Village of Glendale Heights ("Village") for violations of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, the Illinois Antitrust Act, Ill. Rev.Stat. ch. 38 § 60–3, and for breach of the duty of good faith. Presently before the Court are Integrated's motion to dismiss and the Village's motion to dismiss. For reasons set forth below, Integrated's motion is denied; the Village's motion is granted.

Hoffman claims that the Village gave Integrated a contract without bidding for preparation of architectural drawings and outline specifications with respect to construction and remodeling the Village recreational center. Integrated had no architects on its staff and asked an architectural firm to prepare the drawings and specifications. This allegedly gave Integrated the unfair advantage of additional time in pre-

paring its bid on the project. The specifications for the project provided for use of materials manufactured only by Kirby Building Systems; Integrated is Kirby's local distributor. Defendants allegedly failed to list Integrated as a bidder on the project in a publication known as Dodge Construction News Reports for several days, concealing this information from Hoffman. This practice, as well as that of allowing a firm which received the contract for preparation of architectural drawings and specifications to bid on the project, allegedly violated the custom, usage and practice of the construction industry in the Chicago area. Hoffman asserts that Integrated and the Village conspired to restrain trade by fixing the bidding for the recreation center, and that had Hoffman known that Integrated was going to bid on the project, Hoffman would not have prepared a bid.

Motions to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that a plaintiff can prove no set of facts in support of its claim entitling it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In antitrust cases, caution with respect to motions to dismiss is particularly important, since proof of a violation may well rest largely with the alleged conspirators. *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). Using these standards, we consider the parties' arguments.

*Interstate Commerce Nexus*

The Village claims that Hoffman has failed to plead sufficient allegations to satisfy the jurisdictional requirements of a Sherman Act claim. The Sherman Act prohibits "[e]very contract, combination ... or conspiracy, in restraint of trade or commerce among the several states...." 15 U.S.C. § 1. This language defines both the conduct proscribed by the statute and its jurisdictional reach. *Crane v. Intermountain Health Care, Inc.*, 637 F.2d 715, 720 (10th Cir.1980). We are therefore called

upon to decide whether the Village's conduct had a sufficient relationship with interstate commerce to subject it to regulation. The interstate commerce requirement is satisfied by showing that the challenged activity occurred in interstate commerce or if the activity is wholly local in nature, by a showing that interstate commerce was substantially affected. *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 743, 96 S.Ct. 1848, 1851, 48 L.Ed.2d 338 (1976).

Hoffman's complaint declares that "the materials used in the construction of the recreational center (Sports Hub) and to be used in the construction and remodeling of the Village of Glendale Heights recreational center were, and will be, provided for by interstate commerce." In response to the Village's motion, Hoffman filed an affidavit listing materials required by project specifications which are manufactured in states other than Illinois to support its assertion that there is a sufficient interstate commerce nexus for jurisdictional purposes. The Village emphasizes that its activities are intrastate, that operation of the recreation building is a purely local matter, that Integrated is an Illinois corporation and that the construction contract will be carried out in Illinois.

In *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), the Supreme Court addressed the pleading requirements to establish an interstate commerce nexus:

[t]o establish the jurisdictional element of a Sherman Act violation it would be sufficient for petitioners to demonstrate a substantial effect on interstate commerce generated by respondents' brokerage activity. Petitioners need not make the more particularized showing of an effect on interstate commerce caused by the alleged conspiracy to fix commission rates, or by those other aspects of respondents' activity that are alleged to be unlawful. The validity of this approach is confirmed by an examination of the case law. If establishing jurisdiction required a showing that the unlawful con-

duct itself had an effect on interstate commerce, jurisdiction would be defeated by a demonstration that the alleged restraint failed to have its intended anticompetitive effect. This is not the rule of our cases. *See American Tobacco Co. v. United States*, 328 U.S. 781, 811, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 225, n. 59, 60 S.Ct. 811, 846, 84 L.Ed. 1129 (1940).

*Id.* at 242–43, 100 S.Ct. at 509. The Ninth Circuit has interpreted *McLain* to mean that the alleged antitrust violations need not affect interstate commerce, as long as defendants' business activities, independent of the violations, affect interstate commerce. *Western Waste Services Systems v. Universal Waste Control*, 616 F.2d 1094, 1097 (9th Cir.1980), *cert. denied*, 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980). Other circuits have adopted a narrower reading of *McLain*. *E.g., Cordova & Simonpietri Insurance Agency, Inc. v. Chase Manhattan Bank*, 649 F.2d 36 (1st Cir.1981). The Seventh Circuit, however, recently declined to choose between the different interpretations of *McClain*. *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1282 (7th Cir. 1983).

■ In any event, jurisdiction must be determined on a case-by-case basis, examining the relevant economic facts presented by a particular case. `Heille v. City of St. Paul, Minnesota*, 671 F.2d 1134, 1136 (8th Cir.1982). In affirming the district court's holding that a plaintiff failed to demonstrate an interstate commerce nexus, the court in *Heille* noted that neither party purchased nor sold a service or product in interstate commerce. *Id.* at 1137. The present case is clearly distinguishable, since Hoffman asserts that specifications for the recreation building call for products manufactured outside of Illinois. There can be no doubt that the allegations involving interstate commerce in Hoffman's complaint are perfunctory. But in refusing to adopt a particular view of *McLain*, the Seventh Circuit clearly cautioned against the dismissal of antitrust cases:

[d]ismissals in antitrust cases should not be granted lightly. An action should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief. In antitrust cases, dismissals prior to giving the plaintiff an opportunity for discovery should be granted very sparingly. The impact the defendants' activities may have upon interstate commerce is a question of fact not normally susceptible of determination without scrutiny of the proof that may be offered.

*Bunker Ramo*, 713 F.2d at 1282 (citations omitted). Therefore, we cannot conclude at the present stage of this litigation that Hoffman will be unable to prove any set of facts in support of its claim entitling it to relief with respect to the interstate commerce nexus.

### State Action Immunity

The Village also asserts that, pursuant to the state action immunity doctrine, it may engage in the construction of a municipal recreation building even though its conduct may have anticompetitive effects. Hoffman contends that the Village has not acted pursuant to a clearly articulated and affirmatively expressed state policy and therefore is not entitled to antitrust immunity.

The Supreme Court discussed the state action immunity doctrine in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). A marketing program adopted by the State of California prevented raisin producers from freely marketing their crop in interstate commerce. The Court nevertheless held that the program was exempt from the antitrust laws:

[w]e find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature. In a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may consti-

tutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress.

*Id.* at 350–51, 63 S.Ct. at 313. Later, in *City of Lafayette v. Louisiana Power and Light,* 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978), a majority of the Court rejected the argument that Congress did not intend the Sherman Act to apply to local governments. But the Court recognized that a state might sanction anti-competitive conduct by municipalities and immunize such activity from antitrust liability. *Id.* at 413, 98 S.Ct. at 1137.

■ The issue of state action immunity for municipalities reappeared recently in *Community Communications Co. v. City of Boulder,* 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982). The Court held that a municipality's moratorium on the expansion of cable television could not be exempt from antitrust scrutiny unless it constituted the action of the state itself in its sovereign capacity, or unless it constituted municipal action in furtherance or implementation of clearly articulated and affirmatively expressed state policy. *Id.* at 52, 102 S.Ct. at 841. The Village's conduct is clearly not action of the State of Illinois in its sovereign capacity; we must therefore consider whether the Village may be said to have acted "in furtherance or implementation of clearly articulated and affirmatively expressed state policy."

■ The crux of Hoffman's allegations is that the Village engaged in a public works project without competitive bidding. Ill.Rev.Stat. ch. 24 § 11–95–1 authorizes municipalities to construct playgrounds and recreation centers.[1] Moreover, Ill.Rev. Stat. ch. 24 § 8–9–1 authorizes municipalities to waive competitive bidding on projects such as recreation centers:

[i]n municipalities of less than 500,000 except as otherwise provided in Articles 4 and 5 any work or other public improvement which is not to be paid for in whole or in part by special assessment or special taxation, when the expense thereof will exceed $4000, shall be constructed either (1) by a contract let to the lowest responsible bidder after advertising for bids, in the manner prescribed by ordinance, except that any such contract may be entered into by the proper officers without advertising for bids, if authorized by a vote of two-thirds of all of the aldermen of trustees then holding office; or (2) in the following manner, if authorized by a vote of two-thirds of all the aldermen or trustees then holding office, to-wit: the commissioner of public works or other proper officers to be designated by ordinance, shall superintend and cause to be carried out the construction of the work or other public improvement and shall employ exclusively for the performance of all manual labor thereon, laborers and artisans whom the municipality shall pay by the day or hour; and all material of the value of $4000 and upward used in the construction of the work or other public improvement, shall be purchased by contract let to the lowest responsible bidder in the manner to be prescribed by ordinance....

Hoffman claims that these sections do not constitute a "clearly articulated and affirmatively expressed policy" entitling the Village to the State action exemption. We disagree. In *Town of Hallie v. City of Eau Claire,* 700 F.2d 376 (7th Cir.1983), four towns sued a city for refusing to provide them with sewerage treatment services unless they agreed to become annexed to the city. In holding that the city

---

1. Ill.Rev.Stat. ch. 24 § 11–95–1 provides, in pertinent part, that

[t]he corporate authorities of every municipality with a population of less than 500,000 may dedicate and set apart for use as playgrounds or recreation centers, any land or buildings which are owned or leased by the municipality and are not dedicated or devoted to another and inconsistent public use. Such a municipality, in such manner as provided by law for the acquisition of land or buildings for public purposes by the municipality, may acquire or lease land or buildings, or both, within or beyond the corporate limits of the municipality, for playgrounds and recreation centers.

was entitled to state action antitrust immunity, the Seventh Circuit concluded that Wisconsin policy authorized cities to refuse sewerage treatment services absent annexation. *Id.* at 383. In support of this conclusion, the court cited statutes which provided that cities may fix the limits of their utility services, and that they need not extend sewerage systems to towns if the towns refused to become annexed to the city. We believe that Ill.Rev.Stat. ch. 24 § 8–9–1 is evidence of a state policy not to require competitive bidding in municipal construction projects, and that the Village is entitled to state action immunity. Another Illinois statute, Ill.Rev.Stat. ch. 24 § 1–1–10, was recently amended to provide that

> [i]t is the policy of this State that all powers granted, either expressly or by necessary implication, by this Code, other Illinois statute, or the Illinois Constitution to non-home rule municipalities may be exercised by those municipalities notwithstanding effects on competition.
>
> It is further the policy of this State that home-rule municipalities may (1) exercise any power and perform any function pertaining to their government and affairs or (2) exercise those powers within traditional areas of municipal activity, except as limited by the Illinois Constitution or a proper limiting statute, notwithstanding effects on competition.
>
> It is the intention of the General Assembly that the "State action exemption" to the application of federal antitrust statutes be fully available to municipalities to the extent their activities are authorized by law as stated herein.

This statute further supports our conclusion that the Village is entitled to state action immunity. Accordingly, the Village's motion to dismiss is granted.

### Restraint of Trade

Both the Village and Integrated claim that the complaint does not adequately al-lege an unlawful restraint of trade under the antitrust laws. In essence, Hoffman asserts that the Village's conduct in asking Integrated to prepare bid specifications amounts to a restraint of trade because it gave Integrated more time to prepare its bids than other bidders, because the specifications required use of a product whose local distributor is Integrated, and because defendants concealed Integrated's status as a bidder until a few days before the bids were due. Additionally, Hoffman claims that defendants violated an Anti-Collusion affidavit when Integrated received the contract to prepare specifications despite the fact that it had no employer capable of preparing the specifications. Hoffman claims that allowing a firm to both prepare specifications and bid on a project violated local custom and usage, as did the failure to publish Integrated's status as a bidder in an industry newsletter.

■ A complaint fails to state a cause of action under the antitrust laws if the alleged conduct is not the type of activity that the antitrust laws were intended to prevent. *Brunswick Corp. v. Pueblo Bowl-O-Mat,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). Section 1 of the Sherman Act is broadly worded to prohibit "[e]very combination ... or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. But the courts have construed section 1 to prohibit only those combinations which unreasonably restrain competition. *Northern Pacific Railway v. United States,* 356 U.S. 1, 4–5, 78 S.Ct. 514, 517–18, 2 L.Ed.2d 545 (1958); *Bunker Ramo Corp. v. United Business Forms, Inc.,* 713 F.2d 1272, 1283 (7th Cir.1983).

■ Some conduct is so destructive of competition that it is considered *per se* violations of the Sherman Act, *United States v. Topco Associates, Inc.,* 405 U.S. 596, 607–08, 92 S.Ct. 1126, 1133–34, 31 L.Ed.2d 515 (1972).[2] When a *per se* of-

---

**2.** A conspiracy among competitors to submit collusive, noncompetitive rigged bids, however, would be a *per se* violation of the Sherman Act. *United States v. Brighton Bldg. & Maintenance* *Co.,* 598 F.2d 1101, 1106 (7th Cir.1979), *cert. denied,* 444 U.S. 840, 100 S.Ct. 79–80, 62 L.Ed.2d 52 (1979). Hoffman's complaint is devoid of any such allegations.

fense is alleged, a showing of anticompetitive effect is not required to establish a Sherman Act violation. *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 49–50, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977). But the "rule of reason" is the general test for determining whether an antitrust violation has been stated. *Standard Oil v. United States,* 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). A finder of fact must weigh all circumstances presented by a particular case to decide whether a restrictive practice is an unreasonable restraint on competition which must be prohibited. *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977). In contrast to a *per se* violation, under the rule of reason anticompetitive effects or actual harm to competition must be shown to establish an antitrust cause of action. *Independence Tube Corp. v. Copperweld Corp.,* 691 F.2d 310, 322 (7th Cir.1982). In the present case, the parties agree that the rule of reason provides the analytical framework for resolution of the pending motions.

The key to our present inquiry under the rule of reason is whether Hoffman has alleged any anticompetitive effect arising from defendants' conduct or whether we are able to infer such an effect. *Bunker Ramo Corp. v. United Business Forms, Inc.,* 713 F.2d 1272, 1285 (7th Cir. 1983). While industry customs and usages may indeed become part of a contract and bind the parties, *e.g.,* Ill.Rev.Stat. ch. 26 § 2–202(a), we have found no support in case law for the proposition that violations of industry customs and usages constitute violations of federal antitrust law. Additionally, allegations that through a dominant position a defendant has caused users of its product to select its product to the detriment of other manufacturers fail to state a claim under the Sherman Act absent assertions of coercion or improper selling methods. *Eutectic Corp. v. Metco, Inc.,* 505 F.Supp. 73, 76 (E.D.N.Y.1980).

Defendants emphasize two cases in support of their arguments that Hoffman's complaint fails to state a claim, *Security Fire Door Co. v. County of Los Angeles,* 484 F.2d 1028 (9th Cir.1973), and *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.,* 508 F.2d 547 (1st Cir.1974), *cert. denied,* 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975). In *George R. Whitten,* the Court held that a defendant's efforts to induce buyers to draw up specifications that only the defendant could meet was merely a "matter of salesmanship," and not actionable under the antitrust laws. *Id.* at 558. In *George R. Whitten,* however, a trial had been held, and the lower court concluded that the attempt to persuade architects to adopt a supplier's proprietary specifications was a common local practice. There was neither evidence of a conspiracy with the parties adopting the specifications, nor of coercion by the defendant, nor of an absence of available prespecification competition. *Id.* In the instant case, of course, there has been no trial. We do not know whether evidence exists of a conspiracy, coercion or an absence of prespecification competition. Integrated, moreover, allegedly arranged for another firm to prepare the specifications, which called for a product that Integrated distributes locally.

In *Security Fire Door,* the court held that allegations that architects and county representatives drew up specifications to exclude all dumbwaiters manufactured by firms other than one of the defendants did not state a claim under the Sherman Act. As the Court observed,

the choice of product by the purchaser, Los Angeles County, was expressed in the specifications. There is nothing alleged in the complaint to suggest that this choice was made other than in an atmosphere of free competition among suppliers. So far as the complaint alleges, each supplier was perfectly free to tout the virtues of his particular dumbwaiter system in an effort to secure favorable specifications. It would appear that the architects simply favored the Guilbert system. In doing so they and

their principals can hardly be charged with an antitrust conspiracy.

484 F.2d at 1031. In the present case, the choice of product is alleged to have been made by Integrated, the successful bidder, rather than the customer. Whether other bidders were free to "tout the virtues" of other products, or have input into the choice of product, is unclear.

 We therefore believe that allegations of an anticompetitive effect may be inferred from Hoffman's complaint: a firm which prepares specifications and specifies the use of a particular product which it distributes may indeed be able to tailor the specifications to its advantage for purposes of subsequent bidding, which might in turn discourage competitive bidding by other parties. At present, we are unprepared to hold that Hoffman will be unable to present evidence that there was collusion with respect to the bidding process between Integrated and the Village. Integrated's motion to dismiss for failure to state a claim is therefore denied.

### The Noerr-Pennington Doctrine

Integrated also contends that it is entitled to immunity under a doctrine announced in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and refined in *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). In *Noerr,* the Court held that the Sherman Act does not prohibit persons from associating together to influence a governmental body to take an action that would lead to a restraint or monopoly. 365 U.S. at 136, 81 S.Ct. at 529. In *Pennington,* the Court declared that a concerted attempt to influence public officials is not actionable under the Sherman Act regardless of the intent

of the parties. 381 U.S. at 670, 85 S.Ct. at 1593.

The *Noerr-Pennington* doctrine does not, however, apply to cases where governmental officials are alleged to have participated with private parties in a scheme to restrain trade. *Duke & Co. v. Foerster,* 521 F.2d 1277 (3d Cir.1975); *Czajkowski v. State of Illinois,* 460 F.Supp. 1265, 1281 (N.D.Ill.1977), *aff'd,* 588 F.2d 839 (7th Cir.1978).[3] In the present case, Hoffman has alleged collusion on the part of village officials with respect to the award of the recreational center bid. Therefore, the *Noerr-Pennington* doctrine is inapplicable.

Accordingly, Integrated's motion to dismiss is denied; the Village's motion to dismiss is granted.[4] It is so ordered.

---

3. *See also Metro Cable Co. v. CATV of Rockford, Inc.,* 516 F.2d 220 (7th Cir.1975), where the Seventh Circuit held that political contributions, as well as agreements by legislators to support anticompetitive legislative actions are not actionable under the Sherman Act. Unlike *Metro Cable,* the present case goes beyond allegations

of official persuasion by anticompetitive lobbying.

4. The Village also moved to dismiss the prayer for treble damages in Count I of Hoffman's complaint. Our ruling on its motion to dismiss renders unnecessary a decision on this issue.