**RICHARD HOFFMAN CORPORATION, Plaintiff,**

v.

**INTEGRATED BUILDING SYSTEMS, Defendant.**

No. 83 C 5612.

United States District Court, N.D. Illinois, E.D.

Feb. 25, 1985.

Gerald C. Bender, Chicago, Ill., for plaintiff.

John T. Duax, Mark L. Hellner, Schwartz & Freeman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Richard Hoffman Corporation ("Hoffman") sued Integrated Building Systems, Inc. ("Integrated") and the Village of Glendale Heights ("Village") for violations of the Sherman Antitrust Act, 15 U.S.C. §§ 1 *et seq.*, the Illinois Antitrust Act, Ill. Rev.Stat. ch. 38, § 60–3, and for breach of the duty of good faith. On February 15, 1984, this Court granted the Village's motion to dismiss under the doctrine of "state action immunity." 581 F.Supp. 367 (N.D. Ill.1984). However, the Court denied Integrated's motion for dismissal. The parties have since completed discovery, and Integrated has moved for summary judgment. For the reasons set forth below, Integrated's motion is granted.

The following material facts are undisputed. In early 1983, the Village, without taking competitive bids, contracted with Integrated to draw up architectural specifications for the construction and remodelling of a Village recreational center. Integrated and the City signed this contract even though Integrated employed no registered architects. Integrated sub-contracted with Pence and Schwartz, an architectural firm, which then prepared the specifications. Pence and Schwartz's plan specified the use of a pre-engineered building system, manufactured by Kirby Building Systems ("Kirby"). Integrated is the sole local distributor of Kirby systems.

After the specifications were finished, the Village solicited bids for the construction of the project. The reports about the bids appeared from May 18 through May 25, 1983, in a trade publication, the "Dodge Construction News Report." The reports did not disclose that Integrated, which had drawn up the plans, was also bidding on the construction project. On May 26, 1983, Integrated's role as both designer and bidder was first revealed.

Three firms, including Hoffman and Integrated, submitted bids by May 31, 1983, the due date. The two firms other than Integrated did not include a Kirby system in their bids. The Village did not reject the bids because of that, however. Hoffman bid $816,500, the third firm bid $818,751, and Integrated bid $777,705. The Village accepted Integrated's bid, the lowest one offered.

Hoffman claims that the above practices of Integrated and the Village unreasonably restrained trade in violation of Section 1 of the Sherman Act. Its theory can be summarized as follows. Because Integrated received the specification contract on March 25, 1983, it had at least nine weeks to prepare its construction bid.[1] In contrast, Hoffman had but 12 days to prepare its bid when the City went public about the project in May 1983. This difference in preparation time gave Integrated an unfair advantage, argues Hoffman. Moreover, Integrated also derived an unfair advantage by drawing up the architectural plans and then bidding on the construction contract. This practice violated an industry custom. Finally, Integrated enjoyed an unfair advantage because the architectural plans specified the use of Kirby products, which Integrated distributes. In sum, argues Integrated, the above facts show that the bidding process was a sham; that the process inherently and unfairly favored Integrated in a way which unlawfully re-

---

1. Hoffman presented some evidence that Integrated might have had as much as four months to prepare its bid. In our discussion below, we assumed that this longer number is correct.

strained trade. Integrated counters in its motion for summary judgment that its practices, even if considered unfair, did not violate the Sherman Act.

■ In considering Integrated's motion, we are aware that summary judgment is ordinarily inappropriate in antitrust cases because the cases often turn on hidden motive and intent. *See Poller v. Columbia Broadcasting Co.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *O'Bryne v. Checker Oil Co.*, 727 F.2d 159, 163 (7th Cir.1984). However, summary judgment is proper in antitrust cases where no significant probative evidence tends to support the complaint. *O'Bryne*, 727 F.2d at 163; *Havoco of America v. Shell Oil Co.*, 626 F.2d 549, 553 (7th Cir.1980). As in any case, summary judgment may be granted only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). As the moving party, Integrated must show that no genuine issue of material fact exists. *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir. 1984). We must view the evidence, and the reasonable inferences drawn from the evidence, in the light most favorable to Hoffman, the party opposing the motion. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984). With these standards in mind, we turn to Integrated's motion.

■ Section 1 of the Sherman Act, 15 U.S.C. § 1, provides in relevant part, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in re-

straint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." To prevail on a Section 1 claim, Hoffman must allege and prove a "conspiracy in restraint of trade," resulting anticompetitive effects and "antitrust injury," that is, injury of a type that antitrust laws were designed to prevent. *See, e.g., Independence Tube Corp. v. Cooperweld Corp.*, 691 F.2d 310, 320–23 (7th Cir.1982); *rev'd on other grounds,* —— U.S. ——, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984); *Havoco of America, Ltd. v. Shell Oil Co.*, 626 F.2d 549, 554–57 (7th Cir.1980). It appears that a genuine factual dispute exists on the first, or conspiracy, element.[2] But even assuming that to be true, we think that Hoffman cannot establish the second or third elements of its Section 1 claim.

■ The parties agree that Hoffman cannot prove a *per se* violation of the Sherman Act. Instead, the usual test, "the rule of reason," controls our analysis of whether Integrated's acts violated Section 1. *See Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49–50, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977); *Standard Oil Co. v. United States*, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). As the test's name suggests, "reasonableness" of the challenged practice is the touchstone. Under the Rule, the factfinder must weigh all the circumstances of a case to decide whether a practice unreasonably restrains competition. *Continental T.V.*, 433 U.S. at 49, 97 S.Ct. at 2557; *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1283 (7th Cir.1983). The Rule of Reason requires that the plaintiff show anti-

**2.** Integrated is correct that no direct evidence supports the conspiracy claim. However, it ignores the fact that bits of circumstantial evidence support a finding of collusion, and that circumstantial evidence can suffice to render summary judgment improper. *See, e.g., Independence Tube Corp.*, 691 F.2d at 320. The following evidence in the record tends to support an inference of collusion between the Village and Integrated: (1) the Village awarded Integrated the specifications contract, without competitive bidding, even though Integrated employed no registered architects; (2) some evidence suggests that Village officials knew that

Integrated would later bid on the construction project, and that this was highly unusual; (3) the Village failed to disclose Integrated's role as bidder in its initial solicitations in the Dodge Construction News. These facts imply that the Village and Integrated might have agreed to weight the bidding process in Integrated's favor. We are not suggesting that collusion actually took place. Rather, we are saying that circumstantial evidence in the record supports a finding of collusion, thus making summary judgment inappropriate on the conspiracy element of the Sherman Act claim.

competitive effects, or actual harm to competition. *Bunker Ramo*, 713 F.2d at 1283. The question is not whether the defendant's practices were unfair or tortious, but whether those practices hobbled competition. *Id.; see also Havoco of America, Ltd. v. Shell Oil Co.*, 626 F.2d 549, 558 (7th Cir.1980). After weighing all of the material facts, we conclude below that Integrated's practices, while arguably unfair and unethical, did not unreasonably restrain competition. Thus, Hoffman cannot recover on its Sherman Act claim.

■ Hoffman's most significant argument, we think, was that Integrated's specification of Kirby pre-engineered materials, which it distributed, eliminated competition from the bidding process. This concern in large part motivated our denial of Integrated's motion to dismiss. *See* 581 F.Supp. at 373–74. But the facts now in the record do not support a claim that the specifications had any significant anticompetitive effects. Hoffman's Vice-President admitted in his deposition that Kirby systems "are essentially the same as" or "interchangeable" with other systems, including the Mitchell system that it had submitted in its bid. The Village did not reject Hoffman's bid as not conforming to specifications, even though Hoffman had based its bid on the Mitchell system. In fact, the Village had not limited the project to Kirby systems, as it had specified:

> The Village hereby reserves the right to approve as an equal, or reject as not being equal, any article the bidder proposes to furnish which contains major or minor variations from specification requirements.

Moreover, Hoffman had attached to its bid more than a hundred pages of materials "touting the virtues" of the Mitchell system. Thus, *Security Fire Door Co. v. County of Los Angeles*, 484 F.2d 1028 (9th Cir.1973), which we distinguished in our earlier opinion, *see* 581 F.Supp. at 373–74, is no longer distinguishable,[3] since Hoffman and other bidders were free to "tout the virtues" of similar building systems. Finally, it is also significant that the part of Hoffman's bid based on the Mitchell system was actually about $24,000 lower than the part of Integrated's bid which was based on the Kirby system. Thus, Integrated ultimately derived no actual benefit from specifying use of the Kirby system. In sum, the above uncontroverted facts reveal that Integrated's specification of a Kirby system hindered competition little, if at all.

■ Hoffman also argues that the additional time Integrated had to prepare its bid supports its antitrust claim. Looked at in the light most favorable to Hoffman, the facts reveal that Integrated had perhaps as much as four months to prepare its bid, while Hoffman had less than two weeks to do so. Integrated gained this advantage because it had known it was going to bid on the construction contract after preparing the specifications. According to Hoffman, industry custom forbids this practice of a firm bidding on a project for which it had prepared specifications. The purpose of this custom is apparently to prevent collusion or the appearance of collusion. Hoffman relies heavily on the fact of the violation of industry custom. However, as

---

**3.** *Security Fire Door*, held that plaintiff had failed to state a Sherman Act claim where it had alleged that architects and county representatives had drawn up specifications to exclude all dumbwaiters manufactured by firms other than one of the defendants. The Court observed:

> There is nothing alleged in the complaint to suggest that this choice was made other than in an atmosphere of free competition among suppliers. So far as the complaint alleges, each supplier was perfectly free to tout the virtues of his particular dumbwaiter system in an effort to secure favorable specifications. It would appear that the architects simply

> favored the Guilbert system. In doing so they and their principals can hardly be charged with an antitrust conspiracy.

484 F.2d at 1301. In our previous opinion we noted that Integrated, the successful bidder, had specified use of its own product and that it was unclear whether competitors could tout the virtues of their own products. *Security Fire Door* was thus distinguishable. However, in light of the undisputed facts that Kirby and Mitchell systems are essentially equivalent, and that Hoffman was free to tout the virtues of the Mitchell system, this case no longer differs significantly from *Security Fire Door*.

**24**

we noted in our opinion last year, we have found no support in case law for the proposition that a violation of industry custom amounts to a violation of antitrust law. 581 F.Supp. at 373. Hoffman has still not cited us any authority to the contrary. The relevant question is not whether the practice violated industry custom, but whether it significantly hindered competition in the industry. *Cf. Havoco of America v. Shell Oil Co.*, 626 F.2d at 556 (unfair competitive practices do not automatically violate federal antitrust law; conduct may be actionable only if effect is to restrain free competition unreasonably). It might be that in some cases violation of the custom would also substantially hinder competition. As noted above, Integrated's position as designer of the specifications allowed it to specify Kirby systems. If Kirby were exclusive, Integrated could have frozen out competition for the later bid. But Kirby systems were not in fact required, as Hoffman was free to "tout the virtues" of its Mitchell system. And Hoffman has not submitted evidence that twelve days was too little time for it to prepare a competitive bid. Thus, while Integrated might have derived some advantage from having had more time to prepare its bid, no evidence suggests that this advantage affected competition to the extent necessary to support a federal antitrust claim.

In sum, we conclude that Hoffman cannot prove on this record that Integrated's practices had significant anticompetitive effects. As such, Integrated is entitled to summary judgment on Hoffman's Section 1 claim. Although we express no opinion on the issue, it could be that Integrated's conduct was tortious under some state law theory. However, the antitrust laws did not federalize the field of unfair competition.

Otherwise the mere fact that one party bid successfully against another party for a contract would be equivalent to an anticompetitive effect and would raise the specter of an antitrust action being

used as a remedy for any tortious conduct during the course of the competition. This would be contrary to the repeated view of the Supreme Court that the antitrust laws do "not purport to afford remedies for all torts committed by or against persons engaged in interstate commerce." *Hunt v. Crumboch*, 325 U.S. 821, 826, 65 S.Ct. 1545, 1548, 89 L.Ed. 1954 [ (1945) ].

*Havoco*, 626 F.2d at 558. Although a conspiracy among competitors to rig a bidding process would generally amount to a *per se* violation of the Sherman Act, *see, e.g., United States v. Brighton Bldg. & Maintenance Co.*, 598 F.2d 1101, 1106 (7th Cir.) (criminal prosecution), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979), in the usual "rule of reason" case it is much more difficult for a bidder to establish that unfair practices on *one* contract amount to an anticompetitive effect on the general market. *Havoco*, 626 F.2d at 558; *see also General Leaseways v. National Truck Leasing Ass'n*, 744 F.2d 588, 596 (7th Cir.1984) (rule of reason generally requires threshold showing that defendant had enough market power to restrain competition substantially); *but see F. Buddie Contracting, Inc. v. Seawright*, 595 F.Supp. 422, 437–38 (N.D.Ohio 1984) (single contract situation does state antitrust claim under a rule of reason analysis). Whether or not unfair practices on a single contract can ever violate the Sherman Act, Hoffman has failed to prove significant anticompetitive effects in this case.

■ The rest of Hoffman's complaint alleges only state law claims. Our dismissal of the Sherman antitrust claim dissolves our pendent jurisdiction over those state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Those claims are therefore dismissed for lack of subject matter jurisdiction. Accordingly, the case as a whole is dismissed.[4] It is so ordered.

4. In light of this holding, we need not consider Integrated's alternative summary judgment mo-

tion on the issue of damages.